## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**POWELL BROTHERS, INC.**                                            **PLAINTIFF**

**v.**                          **No. 4:22-cv-00719-ERE**

**XPO, INC.**                                                           **DEFENDANT**

## ORDER

This lease dispute is scheduled for a bench trial beginning August 19, 2024. Pending before the Court are Plaintiff/Counter Defendant Powell Brothers, Inc.'s motions in limine and supporting briefs (*Docs. 62, 63, 65, 66)*[1] and Defendant/Counter Claimant XPO, Inc.'s responses in opposition. *Docs. 70, 71*. After careful consideration and for reasons that follow, Powell's motions are DENIED.

### A.    Background

Powell owns a truck terminal at the Port of Little Rock that XPO, a transportation/logistics company, began leasing in 2016. In October 2021, the parties agreed to amend their lease agreement. The amendments: (1) extended the lease period to 2031; (2) required Powell to complete, by December 31, 2021, landlord improvements to the terminal yard or parking area; and (3) required XPO to

---

[1] Powell has filed an additional motion in limine (*Docs. 67, 68*), which will be addressed separately after XPO responds.

complete, by June 30, 2022, tenant improvements to the terminal office space. *Doc. 1 at 27.*

On August 11, 2022, Powell filed this action, seeking a declaration that it had not breached the amended lease agreement. *Doc. 1 at 5.* Powell alleged that it completed the required landlord improvements in March 2022, which included laying two inches of asphalt on the terminal yard. However, by notice of default dated March 31, 2022, XPO complained that the pavement work raised the height of the yard surface, making "it difficult for forklifts to load trucks, thereby putting unnecessary stress on [XPO's] business operations and existing facility equipment." *Doc. 1 at 34.* XPO's notice warned that if Powell did not cure the defective pavement within 30 days, XPO would have the right to correct the defective work and seek remedies provided under the lease.

On September 6, 2022, XPO filed an answer and counterclaim. *Docs. 5, 6.* XPO alleged that Powell's pavement work slowed down XPO's operations and caused damage to equipment (hereinafter, XPO's "Productivity Stress Claim"). For relief, XPO sought damages "in an amount to be proven at trial, including but not limited to the cost of correction and the costs of repair to various [items of] XPO equipment." *Doc. 6 at 10.*

On November 13, 2023, with leave of Court, Powell filed an amended complaint updating the evolving dispute. *Doc. 296.* Powell added a claim that XPO

breached the amended lease by failing to complete tenant improvements by June 30, 2022. *Id. at 6-8.* Powell further alleged that, by letter dated August 10, 2022, Powell notified XPO that it elected to terminate the lease agreement and directed XPO to vacate the terminal by December 31, 2022, which XPO failed to do. *Id. at 48-49.* Powell requested a declaratory judgment that Powell had rightfully terminated the lease and that XPO had no right to occupy the terminal. *Id. at 9.*

On March 4, 2024, with leave of Court, Powell filed a second amended complaint. *Doc. 41.* Powell alleged that by letter dated February 28, 2024, it notified XPO that it no longer elected to terminate the lease and would instead seek other remedies for XPO's failure to complete tenant improvements. *Id. at 8, 54.*

On May 28, 2024, with leave of Court, XPO filed an amended answer affirmatively pleading the doctrines of estoppel, detrimental reliance, and inconsistent positions.[2] *Doc. 45 at 5-6.*

### B. Powell's Motion in Limine to Exclude Evidence from June 28, 2024, Supplemental Responses

In written discovery requests related to XPO's Productivity Stress Claim, Powell sought "every document" that XPO created or received since January 2017 that described the productivity, efficiencies, and inefficiencies of XPO's business operations at the Little Rock terminal, both alone and as compared to other XPO

---

[2] XPO also filed an amended counterclaim that corrected clerical errors.

facilities.[3] *Doc. 62-1 at 11-15.* In responses dated June 9, 2023, XPO objected to the requests on multiple grounds, including relevance and overbreadth. *Id.*

On April 2, 2024, Powell deposed XPO employee Shane Hoard, who worked at the Little Rock terminal from August 2022 to December 2023. *Doc. 62-2 at 32-33*. Among other things, Mr. Hoard testified that, during his time at the Little Rock terminal, he could retrieve daily data summaries of productivity for the prior day, week, month, or quarter. *Id. at 36*.

On June 28, 2024, the discovery cut-off date, XPO provided supplemental responses to Powell's document requests, including computer printouts of data labeled, for example, "motor moves per hour, shipment weights, and labor hours." *Doc. 62-3* (filed under seal).

Powell now moves in limine, pursuant to Rules 26(e) and 37 of the Federal Rules of Civil Procedure, asking the Court to sanction XPO by excluding the data from the June 28 supplemental responses as evidence at trial.

Rule 26(e) requires a party to supplement incorrect or incomplete information provided in discovery responses. Rule 37(c)(1) provides that if a party fails to supplement discovery responses in a timely manner as required under Rule 26(e),

---

[3] XPO reports that as of April 10, 2024, it had 297 service centers in North America. *Doc. 70 at 2 n.2.*

"the party is not allowed to use that information or witness . . . at trial, unless the failure was substantially justified or is harmless."

Powell argues that XPO's supplemental responses should be excluded because Powell "was not afforded its proper right to use the discovery process to depose parties or otherwise probe the contents . . . ." *Doc. 63 at 4*. Powell contends that the timing of XPO's supplemental responses "disallowed [it] from now seeking court action as to any disputes arising from XPO's supplemental discovery responses" and prevented it from "scrutinizing the supplemental responses via written discovery or depositions" which "is highly prejudicial to Powell with trial just weeks away." *Id.*

In response, XPO provides copies of letters between counsel. *Doc. 70 at 11, 17, 19, 22, 23.* In a November 17, 2023 letter to Powell's attorney, XPO's counsel explained that: (1) Powell's document requests related to XPO's Productivity Stress Claim would require the production of thousands of documents; (2) XPO anticipated a more efficient process, whereby it would generate charts and graphs aggregating relevant information; and (3) XPO would be happy to discuss the matter further. *Id. at 20*.

According to XPO, after these communications, Powell agreed that the original document requests were overbroad, but Powell never propounded more limited document requests. By affidavit, XPO's counsel of record, Kael K. Bowling, testifies that, following Mr. Hoard's deposition, Mr. Bowling and opposing counsel

discussed a plan where Powell would obtain data relevant to XPO's Productivity Stress Claim in connection with a Rule 30(b)(6) deposition. *Doc. 70 at 37-38.* However, according to Mr. Bowling, Powell's attorney did not pursue that plan. *Id. at 38*.

The record does not support a finding that XPO failed in its duty to timely supplement discovery responses. Instead, it shows that XPO was willing to provide Powell data relevant to its Productivity Stress Claim, offered to do so, and reasonably anticipated that Powell would request the data in the context of a Rule 30(b)(6) deposition, which never took place.

Even if Powell failed in its duty to timely supplement responses,[4] Powell's failure to pursue data that XPO made clear it was willing to generate rendered XPO's conduct substantially justified.  In addition, any failure on XPO's part was arguably harmless. Powell asserts that it will suffer prejudice because of XPO's "eleventh hour discovery dump" but fails to identify what specific additional discovery it needs to conduct. The current record does not support Powell's assertion of prejudice.

Finally, a motion for discovery sanctions may be denied as untimely or unreasonably delayed. *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994).

---

[4] A supplemental response provided on the last day of discovery is not ideal. However, the remedy, if Powell believed it needed additional discovery, was to attempt to conduct the additional discovery at that time, with Court intervention if necessary.

Here, Powell waited until the eve of trial to seek court intervention. In doing so, Powell bypassed the opportunity to file a motion to compel in 2023, after XPO objected to its document requests, and in April 2024, after Mr. Hoard's deposition.[5] Powell also could have attempted to conduct additional discovery after the June 28 discovery deadline, either informally or with the Court's permission. Powell chose instead to pursue the drastic remedy of excluding trial evidence two weeks before the scheduled bench trial.

On this record, the exclusion of evidence under Rule 37(c) is not warranted, and Powell's motion in limine is denied.

### C.    Powell's Motion in Limine to Exclude XPO's Request for Declaratory Relief

On May 28, 2024, with leave of Court, XPO filed an amended answer affirmatively pleading the doctrines of estoppel, detrimental reliance, and inconsistent positions, asserting:

> Powell sent a letter on November 14, 2022, terminating the lease effective December 1, 2022, and Powell maintained that position for fifteen (15) months . . . until it [filed a second amended complaint] on

---

[5] It is unclear whether XPO intends to rely on the June 28 data at trial. Since the parties have agreed to a bench trial, if it develops during trial that Powell suffered real prejudice from the late disclosure, the Court has flexibility to leave the record open for additional evidence.

March 4, 2024, during which time XPO relied on Powell's position to
its detriment.

*Doc. 45 at 5-6.*

In its trial brief, XPO explains:

Defendant asserts the affirmative defense of estoppel, asking this Court
to rule that [Powell] is estopped from withdrawing its unilateral
termination of the lease [because of] Defendant's detrimental reliance
on same—such that regardless of which party the Court concludes
materially breached the lease first, the lease terminates after trial
pursuant to [Powell's] wishes.

Powell seeks to "exclude" what it perceives as XPO's "request for declaratory
relief."[6] *Doc. 66.* Powell argues that XPO's trial brief transformed XPO's estoppel
defense into a request for a declaratory judgment. According to Powell, XPO's
"eleventh hour ask" should be "excluded" because it was not timely pleaded as a
claim. *Id. at 3.*

Estoppel, whether framed as an affirmative defense or claim for relief, is an
equitable remedy by which "one party to a controversy is precluded because of some
improper action on his part from asserting a particular claim or defense, even one
with merit." *Bracewell v. U.S. Bank Nat. Ass'n*, 748 F.3d 793, 796 (8th Cir. 2014)
(quoting *Ridgewood Dev. Co. v. State,* 294 N.W.2d 288, 293 (Minn. 1980)). Here,

---

[6] Especially considering that this case will be tried to the Court, the relief requested is not
well suited to a "motion in limine," which normally refers to "any motion, whether made before
or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered."
*Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).

in response to Powell's withdrawal of its election to terminate the lease agreement, XPO timely invoked the equitable estoppel doctrine in its answer to the second amended complaint. XPO's trial brief is consistent with the amended answer and merely recognizes that if XPO carries its burden to show that equitable estoppel applies,[7] Powell should be precluded from withdrawing its election to terminate the lease and expel XPO from the terminal.

IT IS THEREFORE ORDERED that Plaintiff's motions in limine (*Docs. 62, 65*) are DENIED.

Dated 9 August 2024.

_____
UNITED STATES MAGISTRATE JUDGE

---

[7] See *Scarlett v. Rose Care, Inc*., 944 S.W.2d 545, 547 (Ark. 1997) (describing defensive equitable estoppel as requiring the following evidence: "(1) conduct by one party who knows the facts and intends that his conduct be relied upon by the second party; (2) the party relying on the first party's conduct must be ignorant of the facts; (3) the party relying on the first party's conduct must do so to his detriment.")